UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

IN RE:

ADVANCED LIGHTING
TECHNOLOGIES, LLC

      DEBTOR

CHAPTER 11
CASE NO. 15-00081-5-SWH

**BRANCH BANKING AND TRUST COMPANY'S OBJECTION TO DEBTOR'S EMERGENCY MOTION FOR ORDER AUTHORIZING POST-PETITION FINANCING ARRANGEMENT PURSUANT TO 11 U.S.C. § 364(D)**

NOW COMES Branch Banking and Trust Company ("BB&T"), a secured creditor in this case, and objects to the Debtor's Emergency Motion for Order Authorizing Post-Petition Financing Arrangement Pursuant to 11 U.S.C. § 364(d) ("Financing Motion"). BB&T states as follows in support of this Objection:

1. The Debtor filed its petition under Chapter 11 of the Bankruptcy Code on January 6, 2015 and it continues to operate as a debtor-in-possession.

2. BB&T is the holder of a claim in the approximate amount of $455,000 secured by a lien on the Debtor's inventory, accounts, equipment, general intangibles and the products and proceeds thereof (the "Collateral"). BB&T's claim is also secured by a second lien on real property located at 118 Peter Gill Road, Henderson, North Carolina (the "Property"). The Property is owned by J & B Properties of Vance, LLC, which leases it to the Debtor for use as the Debtor's principal place of business.

3. The Debtor filed this Financing Motion on January 7, 2015, for authorization for post-petition financing from Durham Commercial Capital Corp. ("Durham Capital") pursuant to a Nonrecourse Receivables Purchase Contract and Security Agreement (the "Agreement") to

fund ongoing operations.[1]  The Financing Motion states that Durham Capital would purchase some or all of the Debtor's accounts receivables equal to the face value of the receivables less a fee of 3.5%.  To ensure the repayment of the purchase of the receivables, the Debtor would grant Durham Capital a first priority lien on all of the Debtor's accounts receivable.

       4.      First, the Agreement is not a financing agreement but instead an asset purchase agreement governed by Section 363(f).  Durham Capital is purchasing assets, the accounts receivable, on a nonrecourse basis and is assuming the risk of collection on the accounts.  The Agreement, called a "Nonrecourse Receiverables Purchase Contract and Security Agreement," contains all of the typical warranties and representations that are customary with an asset sale and shifts all the risk associated with ownership of the receivables to Durham Capital.  As such, the Agreement is a asset purchase agreement that is controlled by Section 363(f), not Section 364(d).

       5.      Section 363(f) allows a debtor to sell property of the estate free and clear of an interest in that property only if the entity who has an interest in the property consents or if the purchase price is greater than the aggregate value of the liens on the property.  The Financing Motion fails to specifically state which receivables are being sold and for what price, but it is clear that the Debtor does not intend to factor enough receivables to pay BB&T's lien in full.  And because BB&T does not consent to the sale of the receivables, the Debtor has not satisfied the requirements of Section 363(f) and is, therefore, prohibited from selling the receivables to Durham Capital.

---

[1] BB&T obtained a copy of the Agreement on January 12, 2015, just one day prior to the shortened response deadline and two days prior to the hearing on the Financing Motion.  Bankruptcy Rule 4001(c)(1)(A) requires the motion seeking authority to obtain credit to include a copy of the proposed credit agreement and the proposed order.  Neither is attached to the Motion.  The Financing Motion is also deficient of other information required by Bankruptcy Rule 4001(c), as discussed later.

6. Notwithstanding the fact that the Debtor seeks authority under Section 364, the Debtor implicitly acknowledges that the contemplated transaction a sale of assets governed by Section 363(f) because it asks the Court to waive the 14-day waiting period imposed by Bankruptcy Rule 6004(h). Rule 6004 relates to the use, sale or lease of property pursuant to Section 363, not to post-petition financing arrangements under Section 364. Rule 6004 is inapplicable to financing arrangements.

7. If the Court determines that the agreement with Durham Capital is a financing agreement, the Debtor has failed to satisfy the requirements of Section 364(d) and Bankruptcy Rule 4001(c). Section 364(d) allows a debtor, after notice and a hearing, to obtain credit or incur debt that is secured by a senior or equal lien on property that is already subject to a lien of another only after the debtor has proven that it is unable to obtain such credit otherwise and there is adequate protection of the interest in the holder of the lien on the property on which the senior or equal lien is proposed. The proposed senior or equal lien is commonly referred to as a "superpriority lien" or a "priming lien" and the debtor bears the burden of proof for satisfying Section 364(d) and Bankruptcy Rule 4001(c).

8. The first prong of Section 364(d)(1) requires the debtor to demonstrate that it was unable to obtain less onerous financing elsewhere. "Because super priority financing displaces liens on which creditors have relied in extending credit, the debtor must demonstrate to the court that it cannot obtain financing by other means." *In re 495 Cent. Park Ave. Corp.*, 136 B.R. 626 (Bankr. S.D.N.Y. 1992). "Although a debtor is not required to seek credit from every possible source, see *In re Snowshoe Co., Inc.,* 789 F. 2d. 1085, 1088 (4th Cir. 1986), a debtor must show that it made a 'reasonable effort' to obtain post-petition financing from other potential lenders on less onerous terms and that such financing was unavailable." *SunTrust Bank*

*v. Den-Mark Construction, Inc.*, 406 B.R. 683 (E.D.N.C. 2009) (citations omitted).  It is for the court to determine on a case-by-case basis how intensive the debtor's efforts must be.  *Id.* at 691.

9. Here, the Debtor has provided nothing to show that the Debtor attempted to obtain less onerous financing.  Instead, the Financing Motion simply states in a footnote that the Debtor attempted to find alternative financing from other sources.  Financing Motion, ¶ 11, Footnote 1.  The Debtor could have disclosed who it contacted about alternative financing, when they were contacted, under what terms and/or circumstances alternative financing was sought, discussed, and/or proposed, and why they refused to extend credit.  Yet, the Debtor chose not to and as a result, it has not met its burden of proving that less onerous financing was not otherwise available.

10. The second requirement of Section 364(d)(1) is that there must be adequate protection of the interest of the holder of the claim whose lien the debtor is attempting to prime to ensure that the secured creditor's position at the time of bankruptcy is not impaired.  Although the term "adequate protection" is not defined by the Code, Section 361 provides three non-exclusive ways to provide adequate protection:  (1) making cash payment to the extent the priming lien results in a decrease in the creditor's collateral value, (2) offering an additional or replacement lien to the extent of a decrease in the value of the property, or (3) otherwise fashioning a method of providing the creditor with the "indubitable equivalent" of its interest in the property.  *Id*. at 694.  The common thread amongst these forms of adequate protection is that the party whose interest is being affected by the priming lien is getting something in exchange for its loss, whether it be a cash payment or new or more collateral.

11. Here, the Debtor has offered nothing.  The Debtor does not propose to make any specific cash payments to offset the decrease in the value of BB&T's collateral.  The closest the

4

Debtor comes to making such an offer is the Debtor's general noncommittal statement that it should be "in a position to pay down the outstanding balance owed to BB&T as the factored funds are received." Finance Motion, ¶ 23. There is nothing specific about how much will be paid, when it will be paid and how BB&T's interest will be adequately protected by these payments. If the Debtor truly intended to reduce BB&T's claim from the factored receivables, the Debtor could have easily set that out in the Financing Motion.

12. Furthermore, the Debtor does not offer a replacement or additional lien to offset the loss in value to its collateral position. Either the Debtor does not have, or has chosen not to offer, any additional or replacement collateral to compensate BB&T for the loss in value to its collateral. Regardless, the fact is that BB&T will not be receiving anything to adequately protect it for the loss in the value of its interest in the Collateral.

13. Nor has the Debtor fashioned a method of providing BB&T with the indubitable equivalent of its interest in property. As best as BB&T can decipher from the Financing Motion, the Debtor relies heavily on the purported equity in other existing collateral unaffected by the priming lien to provide BB&T with the indubitable equivalent of its interest in the accounts receivable.

14. The lack of detail and specificity in the Financing Motion on how BB&T is receiving the indubitable equivalent is troubling. The Debtor asserts that the value of BB&T's liens that are undisturbed by the priming lien is the indubitable equivalent to the loss that it will suffer under the Financing Motion. While this assertion not only does not support that BB&T's interest is adequately protected, it proves that BB&T is <u>not</u> adequately protected because the Financing Motion forces BB&T into an undersecured position. Before the priming lien, the value of BB&T's Collateral is $1,186,639. After the priming lien, the value of BB&T's lien is

5

$259,000.  Furthermore, the Debtor relies on the fact that BB&T's claim is secured by a second lien on the Property; however, Financing Motion provides no indication of the value of the real estate that would provide an equity cushion to serve as the indubitable equivalent of the value of its interest in the property that is being lost in this transacton.

15. In addition to the failing to satisfy the requirement of Section 364(d), the Financing Motion does not comply with Bankruptcy Rule 4001(c). As cited above, Rule 4001(c)(1)(A) requires the Finance Motion be accompanied by a copy of the credit agreement and a proposed order, neither of which is attached to the Motion.

16. Also, the Financing Motion does not comply with the requirements of Rule 4001(c)(1)(B), which requires including a concise statement of the relief requested and listing or summarizing, and set out the location within the relevant documents of, all material provisions of the proposed credit agreement and form of order, including interest rate, maturity, events of default, liens, borrowing limits, and borrowing conditions.  Rule 4001(c)(1)(B) also requires the Financing Motion to identify any provisions that are proposed to remain in effect if interim approval is granted, but final approval is denied, as provided by Rule 4001(c)(2).  The requirements of Rule 4001(c) are important because of the potential harm to the party affected by the post-petition financing and therefore these requirements should not be overlooked or discounted.  The Financing Motion is devoid of these requirements and for this and other reasons stated herein, it should be denied.

17. Rule 4001(c)(2) prohibits the Court from holding a final hearing on the Finance Motion earlier than 15 days after service of the motion.  The Rule does provide that if the motion so requests, the court may conduct a hearing before such 15 day period expires, but the court may authorize the obtaining of credit only to the extent necessary to avoid immediate and

irreparable harm to the estate pending a final hearing. The Financing Motion does not ask for interim relief but instead seeks a final determination on the request for financing from Durham Capital. Because the Financing Motion does not seek interim relief and is being heard less than 15 days from service, the Court is prohibited from granting the relief requested.

18. The priming of an existing lien is extraordinary and should not be done unless the debtor can adequately protect the interest of the holder of the existing lien. *3 Collier on Bankruptcy* ¶ 364.05 (Alan N. Resnick & Henry J. Somner eds., 16th ed. 2013). It should only be allowed where there are no other less-onerous option. See *SunTrust Bank v. Den-Mark Construction, Inc.*, 406 B.R. 683, 693 (E.D.N.C. 2009) ("[A] court considering a debtor's application for approval of a priming, post-petition loan must be guided by the express terms of the governing statute, together with the judicial interpretation of § 364(d)(1) as being appropriate in bankruptcy proceeding as a matter of last resort.").

19. Because the Debtors have not satisfied the requirements of Section 364(d)(1) and Bankruptcy Rule 4001(c) and because the Debtor has not provided sufficient adequate protection to protect BB&T's interest, the Financing Motion should be denied.

20. BB&T reserves the right to make further objections to the Financing Motion.

WHEREFORE, BB&T prays that the Debtor's Emergency Motion for Order Authorizing Post-Petition Financing Arrangement Pursuant to 11 U.S.C. § 364(d) be denied, and for such other and further relief as is just and proper.

Dated:  January 13, 2015

        POYNER SPRUILL <sup>LLP</sup>

     By: <u>s/ James S. Livermon, III</u>
       N.C. State Bar No. 26492
       Attorneys for Branch Banking and Trust Company
       Post Office Box 353
       Rocky Mount, NC  27802-0353
       Telephone: (252) 446-2341
       Email: jlivermon@poynerspruill.com

CERTIFICATE OF SERVICE

I, the undersigned, or Poyner Spruill <sup>LLP</sup> certify:

That I am, at all times hereinafter mentioned was, more than eighteen (18) years of age;

That on this day, I served a copy of the foregoing Branch Banking and Trust Company's Objection to Debtor's Emergency Motion for Order Authorizing Post-Petition Financing Arrangement Pursuant to 11 U.S.C. § 364(d) on;

> Advanced Lighting Technologies, LLC
> Attn: Manager, Officer and/or Director
> 118 Peter Gill Road
> Henderson, NC 27537

by depositing a copy thereof in the United States Mail, First Class, postage prepaid.

That on this day, the foregoing Branch Banking and Trust Company's Objection to Debtor's Emergency Motion for Order Authorizing Post-Petition Financing Arrangement Pursuant to 11 U.S.C. § 364(d) was served by electronic means through the court's CM/ECF service on:

> Philip W. Paine, Esq.
> Attorney for Debtors
>
> Marjorie K. Lynch Esq.
> Bankruptcy Administrator
>
> Gerald A. Jeutter, Jr., Esq.
> Attorney for Durham Commercial Capital Corp.
>
> Brian R. Anderson, Esq.
> Attorney for Eck Supply Company

I certify under penalty of perjury that the foregoing is true and correct.

Dated: January 13, 2015

POYNER SPRUILL <sup>LLP</sup>

By:   s/ James S. Livermon, III
      N.C. State Bar No. 26492
      Attorneys for Branch Banking and Trust Company
      Post Office Box 353
      Rocky Mount, NC  27802-0353
      Telephone: (252) 446-2341
      Email: jlivermon@poynerspruill.com

9