**SO ORDERED.**

**SIGNED this 23 day of January, 2015.**

_____
Stephani W. Humrickhouse
United States Bankruptcy Judge

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

| | |
|---|---|
| In re: ) | |
| ) | Case No. 15-00081-5-SWH |
| Advanced Lighting Technologies, LLC ) | Chapter 11 |
| ) | |
| Debtor ) | |

**ORDER GRANTING EMERGENCY MOTION FOR ORDER AUTHORIZING POST-PETITION FINANCING ARRANGEMENT PURSUANT TO 11 USC §364(c)**

THIS CAUSE came on for hearing before the Court on January 22, 2015 upon the Emergency Motion For Order Authorizing Post-Petition Financing Arrangement Pursuant to 11 USC §364(c) (the "Motion") filed by Advanced Lighting Technologies, LLC on January 21, 2015. Counsel for Advanced Lighting Technologies, LLC (the "Debtor"), Branch Banking and Trust Company ("BB&T"), Eck Supply Company ("Eck") and the Bankruptcy Administrator appeared at the hearing. Based upon the record established at the hearing, the Court hereby finds and concludes as follows:

1. On January 6, 2015, ALT filed a voluntary petition for relief pursuant to Chapter 11, Title 11 of the United States Code (the "Bankruptcy Code") in the Eastern District of North Carolina (the "Bankruptcy Case").

2. The Bankruptcy Court for the Eastern District of North Carolina has issued an order pursuant to 11 U.S.C. §§ 1107 and 1108 of the Bankruptcy Code, authorizing the Debtor to retain its assets and operate its business as debtor in possession.

3. This Court has jurisdiction to consider this motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157 (b)(2)(M).

4. The Debtor is a North Carolina limited liability company in the business of providing

electrical contracting. The Debtor's primary assets are the profits generated from providing these services to its clients.

5. The Debtor's operations, at times, require significant cash to purchase materials and to pay the Debtor's employees. On the other hand, Debtor may not receive payment for completed projects for some 30-60 days after the Debtor pays for the materials and for its employees' time.

6. As a result of this lag between expenses and payments, there are a number of times that the Debtor faces cash shortages to meet its necessary operational expenses while it awaits payments for the completed projects. In light of these cash shortages, the Debtor needs immediate cash flow to meet operating expenses.

7. In addition, the Debtor's two primary customers have specific requirements and demands for the type and make of materials that they need installed in their factories. In turn, the Debtor can obtain these goods and materials from only a limited number of suppliers.

8. The Debtor is unable to obtain the goods and materials it needs to meet the Debtor's obligations to its customers from any of the suppliers who provide such materials on an unsecured credit basis that would be allowed as an administrative expense under 11 USC §503(b)(1).

9. The Debtor is aware that several of its creditors, including Eck Supply Company ("Eck"), have N.C. Gen. Stat. 44A lien rights, which if enforced, could substantially and materially impact the Debtor's relationships with its customers if the Debtor's creditors are forced to pursue these lien rights.

10. The Debtor's ability to reorganize will be substantially impaired if its suppliers will not continue working with the Debtor going forward and/or if the Debtor's customers cease providing work to the Debtor.

11. In order to protect creditors who agreed not to enforce their lien rights, the Debtor established a separate bank account for all potential Chapter 44A lien claims (the "Chapter 44A Account"). The Debtor will deposit in the Chapter 44A Account all funds it receives that are subject to a Notice of Claim of Liens on Funds that may be submitted in accordance with the procedures established in the Motion to Establish a Procedure for the Perfection of Statutory Mechanics' Liens (the "Procedures Motion").

12. As of January 20, 2015, the Debtor had received approximately $132,000 in the Chapter 44A Account, approximately $124,000 of which is subject to Eck's previously submitted Notices of Claim of Lien Upon Funds.

13. Consistent with the Procedures Motion, on January 14, 2015, Eck served Notices of Claim of Lien on Funds on the Debtor. Eck's lien on funds is deemed to have attached to funds currently in the Chapter 44A Account to the same extent as if Eck served the Notices of Claim of Lien on Funds according to N.C.G.S., Chapter 44A, on the relevant owner and/or general contractor on January 14, 2015. Any future Notice of Claim of Lien on Funds shall,

when served on the Debtor, create a lien on funds in the Chapter 44A Account to the same extent as if served on the relevant owner and/or general contractor. This Procedure is intended to give lien claimants, when they serve a Notice of Claim of Lien on Funds on the Debtor, the same (no greater, no less) rights in funds in the Chapter 44A Account as they would have in funds in the hands of ALT's customers.

14. In order to meet its short term cash needs and to obtain the materials it needs to complete ongoing projects, the Debtor and Eck have reached an agreement whereby Eck has agreed (1) to provide a limited credit line to allow the Debtor to purchase up to $50,000.00 of materials from Eck on credit and (2) to allow the release to Debtor of a total $41,173.91 from the Chapter 44A Account that is subject to Eck's lien rights in the manner described below.

15. Under the circumstances the Debtor is currently facing, if the Debtor does not receive the unsecured credit extended by Eck as contemplated in this Order, the Debtor faces immediate and irreparable harm.

NOW THEREFORE, the Court orders, adjudges and decrees as follows:

1. The Debtor is permitted to incur unsecured debt in the form of a line of credit to purchase certain materials from Eck and to use the $41,173.91 liened by Eck on the following terms:

    a. ALT shall be permitted to purchase up to $50,000.00 of materials and supplies from Eck on credit.

    b. ALT shall be permitted to use $17,000.00 from the 44A Account immediately upon entry of this Order. Upon entry of the Order approving the Procedures Motion, ALT shall be permitted to use the remaining $24,173.91 for a total of $41,173.91 liened by Eck.

    c. As soon as ALT receives the receivable on the project known as MARS Petcare: ALT-727 Switch Gear Purchase, or the receivable on the project known as MARS Petcare: ALT-725 Switch Gear Change Out, but no later than February 5, 2015, ALT shall pay Eck the full amount that ALT purchases on the line of credit, plus the $41,173.91 to be released from the Chapter 44A account. BB&T consents to this payment to Eck by ALT from BB&T's cash collateral.

    d. Purchases on the $50,000 line of credit are expressly conditioned on all the following :

        i. As soon as ALT receives the receivable on the project known as MARS Petcare: ALT-727 Switch Gear Purchase, but no later than February 5, 2015, ALT shall pay Eck the amount of its asserted lien claims in the project known as MARS Petcare: ALT-727 Switch Gear Purchase, provided no timely objection is made by BB&T or the Bankruptcy Administrator to such payment, pursuant to the Procedures Motion.

    ii. As soon as ALT receives the receivable on the project known as MARS Petcare: ALT-725 Switch Gear Change Out, but no later than February 13, 2015, ALT shall pay Eck the amount of its asserted lien claims in the project known as MARS Petcare: ALT-725 Switch Gear Change Out, provided no timely objection is made by BB&T or the Bankruptcy Administrator to such payment, pursuant to Procedures Motion.

    iii. If the above-described payments are not made in a timely manner as outlined above, ALT's right to draw on the line of credit immediately terminates.

e. ALT's right to purchase materials on the line of credit shall also immediately terminate upon the occurrence of any of the following events:

    i. The dismissal of the Bankruptcy Case;

    ii. The appointment of a trustee in the Bankruptcy Case;

    iii. The conversion of the Bankruptcy Case to a case under Chapter 7 of the Bankruptcy Code;

    iv. The Debtor's filing, or the confirmation of, a Chapter 11 plan of reorganization in the Bankruptcy Case that does not provide for the full satisfaction of all pre-petition claims of Eck in a manner acceptable to Eck in its sole discretion;

    v. The commencement by ALT of any lawsuit, adversary proceeding, or contested matter against Eck; or

    vi. The entry of any order that modifies the rights of Eck under this agreement without Eck's express consent.

f. Eck has no obligation to increase the line of credit beyond $50,000 or extend further credit to ALT.

g. ALT shall use the $41,173.91 currently subject to Eck's lien in accordance with a budget approved by Eck. The budget is attached to this Order.

h. In exchange for the $50,000 extension of credit under the line of credit and use of the $41,173.91 liened by Eck, Eck shall be given an administrative expense with priority over any and all administrative expenses of the kind specified in section 503(b) and 507(b) pursuant to 11 U.S.C. § 364(c)(1). Eck's administrative priority claim shall be equal to (1) the amount of credit Eck extends to ALT under the line of credit (up to $50,000.00), plus (2) the $41,173.91 currently subject to Eck's lien.

  i. Eck is hereby granted a perfected, blanket lien on all assets of Trinity Electrical Construction Co. ("Trinity Electrical") to secure the line of credit, the $41,173.91, and all pre-petition amounts owed to Eck by ALT without any further action of Eck or Trinity Electrical and without the execution, filing, or recording of any financing statements, security agreements or other documents. Trinity Electrical is an affiliate of the Debtor. Trinity Electrical generally maintains stock inventory which is sold from time to time to the Debtor as needed for the Debtor's projects, owns equipment which is leased by the Debtor, and owns two vehicles. Despite the granting of a perfected lien in Trinity Electrical's assets without the need for further action of Eck or Trinity Electrical, the Debtor and Trinity Electrical shall cooperate fully with Eck to execute any documents and take any actions as reasonably requested by Eck to reflect and effectuate the granting and perfection of such lien. No extension of credit or release of the $41,173.91 shall occur under this Order unless and until the previously-filed UCC-1 financing statement of Durham Commercial Capital Corp. is terminated in accordance with North Carolina law, but Eck may waive this requirement in its sole discretion.

  j. As an express condition of Eck extending any credit to the Debtor and of the release of the $41,173.91, Trinity Electrical must take all actions available to it under North Carolina law to cause any filed UCC-1 financing statements that predate this order to be cancelled and/or terminated, to the satisfaction of Eck. Eck may waive this requirement in its sole discretion.

  k. Trinity Electrical shall not execute a security agreement encumbering its assets or pledge its assets as security to any other party until all of the Debtor's obligations owed to Eck are paid in full.

  l. In the event of a default, Eck shall not be required to exhaust any of its remedies against Trinity Electrical or its assets prior to seeking recovery of those sums due from the Debtor.

2. Under 11 USC §364(c), since unsecured credit is otherwise unavailable to the Debtor, Eck herein shall be granted a priority over all administrative expenses of the kind specified in 11 USC §§ 503(b) or 507(b), to the extent of the credit extended to the Debtor by Eck.

3. The Debtor faces immediate and irreparable harm if the Debtor does not receive the unsecured credit extended by Eck as contemplated herein,

4. The 14 day notice requirement of Fed. R. Bankr. Pro. 4001(c)(2) is waived and the transaction set out herein can be contemplated in order to avoid immediate and irreparable harm to the Debtor.

**END OF DOCUMENT**